IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BRENDON PATRICK ORR, | * | |
| Plaintiff, | * | |
| v | * | Civil Action No. GLR-14-839 |
| ROBERT HOLLER, et al., | * | |
| Defendants. | * | |

## **MEMORANDUM OPINION**

Pending before the Court is Defendants', Correctional Officer II Robert R. Holler and Correctional Officer II Michael W. Rounds (collectively "Correctional Officers"), Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 16). As a courtesy to Plaintiff, Brendan Patrick Orr, the Clerk's office issued a Rule 12/56 Letter advising him of his duty to respond to the Correctional Officers' Motion. (ECF No. 17). Orr was forewarned that his failure to file a timely written response could result in the dismissal of his case without further notice. Orr's response was due on September 7, 2014. To date, the Court has no record of a response being filed. Accordingly, the Correctional Officers' Motion will be considered unopposed. The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2014). For the reasons outlined below, the Correctional Officers' Motion will be granted.

**Background**[1]

Orr, an inmate currently confined at the Western Correctional Institution ("WCI"), filed this action on March 18, 2014, pursuant to 42 U.S.C. § 1983 (2012), claiming that the Correctional Officers planted contraband in his cell during a cell search out of personal animus, that Defendant Rounds assaulted him during a strip search by "rough housing" him, and that he was subsequently "taunted and degraded" during the search of his cell. Orr seeks monetary compensation in excess of $500,000.00 and unspecified declaratory and injunctive relief.

On December 28, 2013, the Correctional Officers conducted a random search of cell D45 in Housing Unit # 2, which was assigned solely to Orr. (Yates Decl. Ex. 1, at 7, ECF No. 16-2). As part of the search procedure, Orr was handcuffed, escorted from his cell, and taken behind "door six" to be strip searched. (Holler Decl. Ex 2, ECF No. 16-3); (Rounds Decl. Ex. 3, ECF No. 16-4). After the strip search, Orr was handcuffed again and escorted back to the area in front of his cell. Orr was placed in a plastic chair outside of his cell to permit him to view the search of his cell. (Holler Decl.); (Rounds Decl.).

During the search, Defendant Holler found a piece of white round plastic, which was approximately eight and a half inches long and sharpened to a point on one end, under Orr's mattress. (Yates Decl., at 7, 11); (Holler Decl.); (Rounds Decl.). The item was covered in white cloth and wrapped with tape around it to make a handle. (Yates Decl., at 7). Defendant Rounds secured the weapon and placed it into an evidence container. (Holler Decl.); (Rounds Decl.). Orr was then identified by identification card, informed that he was being issued an adjustment, and escorted to Housing unit #4 without incident. (Yates Decl., at 7).

---

[1] The following facts are taken from the Correctional Officers' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, are supported by the record, and are unopposed.

On January 3, 2014, a disciplinary hearing was conducted by Hearing Officer David Sipes concerning the December 28, 2013 incident. (Yates Decl., at 3-14). Orr was charged with violating rules 105 (possession of a weapon or any article modified into a weapon; the unauthorized possession of any implement, article, or tool that reasonably could be modified into or used as a weapon) and 406 (possessing, passing, or receiving contraband). (Yates Decl., at 3). Orr pled not guilty and testified that his cell was left open while he was taken for a strip search, Defendant Holler offered to "fix" his infraction if Orr provided him with a green dot card,[2] and Defendant Holler planted the contraband in his cell in retaliation for a high school grudge. (Id. at 3-4). Nevertheless, Hearing Officer Sipes concluded that Orr's testimony was not persuasive. (Id. at 4). Additionally, he found the Correctional Officers' report credible and reliable. (Id.). Orr was found guilty of violating rules 105 and 406. Orr received a term of segregation for 180 days with respect to the violation of rule 105 and an additional forty-five days with respect to the violation of rule 406, plus a six month visitation suspension. (Id. at 5)

After the hearing, Captain Butler investigated Orr's allegation that Defendant Holler acted in retaliation for a high school fight over a woman named Sasha Warner.[3] (Mot. Dismiss or Summ. J. Ex. 4 ["Butler Investigation"], at 3, ECF No. 16-5). Leasure is employed at WCI as a Parole Associate. When she learned Orr was housed at WCI, she made a report and met with Lieutenant McKenzie, the Housing Unit manager, to report her previous relationship with Orr. (Id.) Leasure informed Captain Butler that she neither knew Defendant Holler nor remembered Orr ever getting into a fight with anyone over her. (Id.)

---

[2] A green dot card is a reloadable prepaid credit card. See www.greencard.com.
[3] Sasha Warner now uses the surname Leasure due to marriage.

Additionally, Butler interviewed Officer Kennell, the Officer in Charge of the Housing Unit at the time of the incident, on January 10, 2014.  (Butler Investigation at 5).  Officer Kennell indicated that she chose Orr's cell for a random search because he was single-celled and it would be quicker.  (Id.).  Further, she indicated that while Orr's cell door reopened when he was being returned to his cell, the cell door was not left open the entire time Orr was being strip searched.  (Id.).

## Standard of Review

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 556.  "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

"When matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 260-61 (4th Cir. 1998) (alteration in original) (quoting Fed.R.Civ.P. 12(b)) (internal quotation marks omitted).  Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 158-59 (1970)).  Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (alteration in original).

A "material fact" is one that might affect the outcome of a party's case. Id. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)).  Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265.

Here, because the Court will consider matters outside of the pleading, the Correctional Officers' Motion will be construed as a Motion for Summary Judgment.

**Analysis**

**A.    Excessive Force**

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6–7 (1992).  This Court must

5

look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. See Whitley v. Albers, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. See Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). The extent of injury incurred is one factor indicative of whether or not the force used was necessary in a particular situation, but if force is applied maliciously and sadistically liability is not avoided simply because the prisoner had the good fortune to escape serious harm. See id. at 38.

Here, Orr has failed to demonstrate that the alleged assault actually occurred, but also that it was carried out "maliciously and sadistically." First, Orr neither alleges nor demonstrates any injury related to the assault. Next, the Correctional Officers deny, by declaration, that Orr was assaulted as alleged in the Complaint. (Holler Decl.); (Rounds Decl.). Orr has failed to offer any evidence disputing the Correctional Officers declarations.[4] Finally, Orr's allegation that Defendant Holler acted in retaliation for a high school fight was thoroughly investigated by Captain Butler. Thus, the Correctional Officers are entitled to summary judgment on this claim.

**B.** **Retaliation**

Orr's claim of retaliation fares no better. Only retaliation for the exercise of constitutional rights is actionable under 42 U.S.C. § 1983. Am. Civil Liberties Union of Md., Inc. v. Wicomico Cnty., Md., 999 F.2d 780, 785 (4th Cir. 1993). An inmate alleging retaliation "bears the burden

---

[4] Although the non-moving party may rely upon a verified complaint in opposing a motion for summary judgment where allegations in the complaint are based on personal knowledge, see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991), Orr's complaint is not verified.

of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff." Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).  In the prison context, claims of retaliation are treated with skepticism because "'[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'"  Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (alteration in the original) (quoting Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)).

   Here, Orr alleges Defendant Holler planted the contraband in his cell in retaliation for a fight over a woman they both liked in high school, and who currently works at WCI.  He offers nothing in support of his claim and the record before the court refutes Orr's allegation of retaliation.  First, Defendant Holler acknowledged that he and Orr attended the same high school, he denied, however, knowing Orr personally. (Holler Decl.).  Next, Leasure informed Captain Butler that she neither knew Defendant Holler nor remembered Orr ever getting into a fight with anyone over her.  (Butler Investigation at 3).  Finally, Orr received a full and fair hearing concerning the disciplinary charge lodged against him for having a weapon in his cell.[5]  Thus, the Correctional Officers are entitled to summary judgment on this claim.

**C.    False Disciplinary Report**

   In prison disciplinary proceedings which bring the possible loss of good conduct credits, a prisoner is entitled to certain due process protections.  See Wolff v. McDonnell, 418 U.S. 539, 563 (1974).  These protections include advance written notice of the charges against him, a

---

[5] See infra Section C.

hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. Wolff, 418 U.S. at 564-71. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455 (1985).

Here, Orr received all the process he was due.  He was given timely advance written notice of the infractions and was permitted to attend the disciplinary hearing and have the inmate representative of his choice.  He also received written findings of the hearing officer.  Moreover, the hearing officer's determination of guilt was based upon review of Orr's testimony and the written record, upon which the hearing officer based his determinations as to credibility and demeanor.  Thus, the Correctional Officers are entitled to summary judgment on this claim.

## Conclusion

For the aforementioned reasons, the Correctional Officers' Motion, construed as a Motion for Summary judgment, is GRANTED.[6]  A separate Order follows.

<u>February 24, 2015</u>
Date

/s/
_____
George L. Russell, III
United States District Judge

---

[6] Having found no constitutional violation, the Court need not address the Correctional Officers' defense of qualified immunity.